EMINENT HOUSEHOLD OF COLUMBIAN WOODMEN *v.* DARDEN.

Opinion delivered November 5, 1917.

FRATERNAL INSURANCE—CONDITIONS IN POLICY—LIABILITY OF ORDER.— Deceased held a policy in a fraternal insurance company which provided that the policy should be void if (among other things) he lost his life, in consequence of a misdemeanor, violation of the law, duel, or combat, except in a case of self-defense. Deceased was shot and killed by one L. after a quarrel or altercation. *Held*, under the evidence and instructions, a verdict in favor of deceased's beneficiary, would not be disturbed on appeal.

Appeal from Lonoke Circuit Court; *Thomas C. Trimble,* Judge; affirmed.

*Trimble & Williams,* for appellant.

1. The deceased violated the terms of the contract by voluntarily engaging in a duel. 109 Ark. 400; 118 *Id.* 226.

2. The court erred in giving instructions Nos. 5 and 7. 59 Ark. 132; 109 *Id.* 514. The instructions were conflicting. 123 Ark. 600; 83 *Id.* 204; 74 *Id.* 441; 65 *Id.* 98; *Ib.* 64; 72 *Id.* 40; 99 *Id.* 384. See also 95 *Id.* 506. The

error was not cured by other instructions. 87 *Id.* 366; 88 *Id.* 550; 79 *Id.* 13. Nos. 5 and 7 are incorrect, conflicting contradictory, misleading and prejudical. *Supra.*

Appellee, *pro se.*

1. Even if Darden was the aggressor, defendant can not set up that as a defense. The verdict is sustained by the evidence, and there is no error in the instructions. 111 Ind. 462; 60 Am. Rep. 702; 11 N. E. 230; 89 N. E. 398; 6 L. R. A. 731; 101 Tenn. 22; 42 L. R. A. 247; 170 Ill. 79; Richards on Insurance (3 ed.) 536; 136 U. S. 297, etc.

McCULLOCH, C. J. J. W. Darden was a member or "guest," as described in the policy or benefit certificate, of a fraternal benefit society known as The Eminent Household of Columbian Woodmen, the policy being payable to his wife, Nannie M. Darden, who is the plaintiff in this action. Darden, while a member in good standing of said society, came to his death by violence at the hands of one Linn. The suit on the policy is defended on the sole ground that there was a violation of a clause of the by-laws of the order which constituted a part of the contract, in the following language:

"If a guest holding a covenant shall * * * die, or become totally and permanent disabled, or suffer loss of limb, or eye, or sustain broken limb in consequence of such misdemeanor, or any violation of law, * * * or in consequence of a duel, or combat, except in self-defense, * * * the covenant shall be void, and of no effect, and all payments made or benefits which may have been accrued thereunder, shall be forfeited without notice or service."

The case was tried before a jury on the issue as to the cause of Darden's death, whether or not the manner of his death constituted a violation of the terms of the policy.

It appears from the testimony that Darden and Linn were both farmers in Lonoke County, and that an altercation arose between them on account of the conduct of Darden in ordering one of Linn's tenants to vacate a house on the farm leased by Linn. The two parties, Linn

and Darden, met one day on a bridge in the neighborhood where they both resided, and Linn shot and killed Darden in the encounter. Linn testified that when he and Darden met on the bridge, after a brief conversation concerning other matters, the altercation arose about Darden having ordered the tenant out of the house and that Darden cursed him and drew his pistol and that he shot Darden while the latter was making effort to shoot him. Darden was shot twice and fell from his horse as the horse ran away from the scene of the shooting. Another witness in the case corroborated Linn in his statement that he shot Darden after the latter had drawn a pistol and was attempting to shoot him. On the other hand, testimony was adduced which tended to show that Darden was unarmed at the time, and the jury could have found, and doubtless did find, that the killing of Darden by Linn was not justified. Under the instructions of the court the verdict of the jury necessarily constituted a finding to the effect that the death of Darden did not result from his own unlawful act or while he was engaged in a duel or combat, within the meaning of the policy.

The only ground urged for reversal is that the court erred in giving two instructions, which read as follows:

"No. 5. Upon the issue in this case as to whether or not the assured came to his death by reason of violation of the law, unless you find that the assured drew his pistol and was attempting to take the life of Fred Linn or was attempting to inflict great bodily injury upon the said Fred Linn, then you will find for the plaintiff."

"No. 7. Unless you find that the assured was armed with a pistol and that he had drawn the same and that he was intending and attempting to take the life of the said Fred Linn, or to inflict upon him great bodily injury, then your verdict will be for the plaintiff."

It is contended that each of those instructions is in conflict with another instruction given by the court at the instance of the defendant, and are erroneous for the reason that they ignore the principle that if Darden was the aggressor in the encounter, and that when Linn fired the

fatal shot he honestly believed without fault or carelessness on his part that he was in actual danger of receiving great bodily injury, the killing was justifiable. The instructions are open to the objections stated, but the error in omitting the principle just mentioned is not prejudicial for the reason that there is no question in this case of Linn acting upon mere appearances of danger. The meeting between the two men was in broad daylight and Linn and another witness described with certainty the details of the encounter, and they both state that Darden drew his pistol and presented it, or "threw it on Linn," as they say, and attempted to shoot. Other circumstances in the case contradict that testimony, and the jury only had to consider whether or not the statement was true. There is no testimony in the case which would have warranted the conclusion that even though Darden did not draw a pistol and make an assault upon Linn, that the latter honestly and in good faith believed that he was in actual danger of receiving great bodily harm.

We think that the instructions, though not strictly accurate, presented the issue to the jury in a way that no prejudice resulted, and that the defendant was bound by the verdict of the jury.

Affirmed.